**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LEONARD HOLBDY,**
                         **Petitioner,**         **5:05-CV-1406**
  **vs.**                                                   **(NAM)**
                                                            **Related Criminal Action**
**UNITED STATES OF AMERICA,**                **03-CR-0243**

                         **Respondent.**
_____

APPEARANCES                                 OF COUNSEL:

Leonard Holbdy
12209-052
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837
Petitioner, *Pro Se*

Office of the United States Attorney         John M. Katko, Esq.
P.O. Box 7198                                   Assistant U.S. Attorney
100 S. Clinton Street
Syracuse, NY 13261-7198
Attorney for Respondent

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    BACKGROUND[1]**

On April 29, 2004, a Second Superseding Indictment was returned by a grand jury sitting in the Northern District of New York.  *See* 03-CR-0243, Dkt. No. 315 ("Superceding Indictment"). That instrument alleged that petitioner *pro se* Leonard Holbdy and others combined, conspired, confederated, and agreed to engage in a pattern of racketeering activity through their membership in a criminal enterprise known as the Boot Camp Gang.  Paragraph 11 of that instrument alleged that on or about June 27, 2003, Holbdy assisted another individual who committed the murder of

---

[1] The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, *Holbdy v. United States*, 5:05-CV-1406 ("05-CV-1406"), as well as the file of the related criminal matter, *United States v. Edwards et al.*, 5:03-CR-0243 (N.D.N.Y.) ("03-CR-0243").

Demetrious Elmore with a .45 caliber handgun.[2] The Superceding Indictment further alleged that the defendants agreed to conduct the affairs of that enterprise through a pattern of racketeering activity by engaging in acts of: 1) murder, in violation of New York Penal Law §§ 125.25, 110.05 and 105.17; 2) conspiracy to possess with intent to distribute and distribution of cocaine base (crack) and marijuana; 3) obstruction of justice, in violation of 18 U.S.C. § 1503; and 4) witness tampering, contrary to 18 U.S.C. § 1512(b)(3). *See* Superceding Indictment at pp. 6-7. Holbdy was specifically referenced in overt acts nos. 43 and 45 of that instrument. Those acts claimed that on or about September 26, 2001, he possessed 3.1 grams of crack cocaine, and that on June 27, 2003, he drove his car so that Christian Williams, a co-defendant in the Superceding Indictment, could kill Elmore, who was a member of a rival gang in the Syracuse, New York area. *See* Superceding Indictment, Overt Acts Nos. 43 and 45.

On June 7, 2004, following negotiations between Holbdy's counsel and Assistant United States Attorney John Katko ("AUSA Katko"), the parties entered into a plea agreement relating to the charges brought against Holbdy. 03-CR-0243, Dkt. No. 331 ("Plea Agreement"). In that agreement, the parties set forth in detail all the terms of the agreement, including among other things, the maximum sentence to which Holbdy was subject; the potential range of imprisonment that could be imposed on him under the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G." ); the factual basis for his guilty plea, and the fact that in the plea agreement, Holbdy was expressly waiving his right to appeal or collaterally attack his conviction and any sentence of imprisonment of 300 months or less. *See* Plea Agreement. In that agreement, Holbdy admitted the following facts: i) at some point in 1995 through the date of the Superceding

---

[2] As will be seen, that allegation in the Superceding Indictment is significant because, if proven, it raised the statutory maximum term to life imprisonment for each of the defendants in the Superceding Indictment pursuant to 18 U.S.C. § 1963(a), which provides that the statutory maximum penalty is "life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment").

Indictment, Holbdy, along with other members of the Boot Camp Gang, combined, conspired, confederated and agreed to engage in a pattern of racketeering activity that included possessing with intent to distribute and distributing cocaine base (crack) and marijuana; ii) Boot Camp Gang members routinely guarded gang territory and resorted to acts of violence to ensure that no rival gang members encroached upon that territory; iii) Holbdy was a member of the Boot Camp Gang who had possessed crack cocaine in connection with his gang activity, including on or about September 26, 2001; iv) as a member of the Boot Camp Gang, he was involved in the June 27, 2003 shooting death of Elmore; v) on that day, Holbdy drove his car so that Christian Williams, a passenger in Holbdy's car and fellow Boot Camp Gang member, could shoot and kill Elmore; and v) Holbdy was responsible, either directly or through the relevant conduct of his co-conspirators, for at least 50 but less than 150 grams of cocaine base (crack). *See* Plea Agreement at pp. 3-4. In that agreement, Holbdy also admitted that, based upon his conduct that was readily provable by the Government, his admitted involvement in the Elmore murder caused the base offense level for his crime to be 43 under the United States Sentencing Guidelines. *See* Plea Agreement at ¶ 7(c); *see also* U.S.S.G. § 2A1.1.[3] That Plea Agreement also contained a waiver of his right to appeal and/or collaterally attack his conviction and any sentence of imprisonment of 300 months or less. Plea Agreement at ¶ 11.

At the proceeding over which this Court presided wherein Holbdy formally entered his change of plea, the Court informed him of his rights and the consequences of his plea. *See* Transcript of Change of Plea of Leonard Holbdy (05-CV-1406, Attachment to Dkt. No. 5) ("Plea

---

[3] That provision of the Sentencing Guidelines reads as follows:
  Part A Offenses Against the Person
    1. Homicide
      § 2A1.1 First Degree Murder
        (a) Base Offense Level 43.

3


Tr.") at pp. 2-4.  After Holbdy acknowledged that he understood his rights, *id.* at p. 4, the Court took his guilty plea and then asked him a number of questions regarding his background and prior drug use.  *Id.* at pp. 7-10.  Holbdy then acknowledged that counsel had advised Holbdy of his rights, and declared that he was satisfied with his counsel's representation of him.  *Id.* at 10.  The Court then elicited answers from him which established that he had not been threatened into changing his plea, he was not under any duress, and he was entering the plea voluntarily and of his own free will.  *Id.* at 10-11.  AUSA Katko then discussed what the Government would have proven if this case had gone to trial, which included proof that Holbdy:  i) possessed crack cocaine on September 26, 2001; ii) together with his co-defendants, were criminally responsible for at least 50 grams of crack cocaine and iii) was involved in the June 27, 2003 homicide of Elmore.  *Id.* at 13-14.  This Court then asked Holbdy if the prosecutor's statement as to what had occurred was, in fact, what had transpired, to which petitioner responded, "Yes sir."  *Id.* at 15.  When the Court asked Holbdy if there was "[a]ny question about that," he responded:  "No sir."  *Id.*  The Court then requested that AUSA Katko reiterate the stipulations into which Holbdy had entered in the Plea Agreement that related to the penalties to which he was subject.  *Id.* at p. 15.  The prosecutor then noted that, pursuant to paragraph seven of the Plea Agreement, Holbdy "stipulate[d] that because of his involvement in the murder [of Elmore], his Base Offense Level [wa]s 43, for (*sic*) which three points w[ould] be subtracted because of his timely acceptance of responsibility, for a [Total] Offense Level of 40."  *Id.* at pp. 15-16.  The Court then accepted his guilty plea.  *Id.* at pp. 21-22.

The Probation Department for the Northern District of New York thereafter prepared a Pretrial Services Report ("PSR") in the related criminal matter.  Defense counsel subsequently submitted a sentencing memorandum on November 16, 2004.  03-CR-0243, Dkt. No. 477

("Sentencing Mem."). In that memorandum, counsel argued various aspects in support of Holbdy's claim that his criminal history category was improperly calculated and that, in any event, his criminal history was overstated by the Probation Department. Specifically, counsel argued that Holbdy's base offense level should be lowered because, according to counsel, Holbdy's participation in the murder of Elmore amounted to no more than second degree murder under the Sentencing Guidelines. *See* Sentencing Mem. at pp. 2-6. Defense counsel also argued for a downward departure from the recommended criminal history category of level IV. In support of that assertion, counsel noted that the majority of Holbdy's criminal history points arose out of youthful offender adjudications and misdemeanor offenses, which counsel argued "significantly over-represen[ted] the seriousness of [Holbdy's] criminal history" *Id.* at 8.

At Holbdy's sentencing, trial counsel reiterated his arguments relating to Holbdy's base offense level and criminal history category. *See* Transcript of Sentencing of Leonard Holbdy (6/7/04) ("Sentencing Tr.") at pp. 3-4. In rejecting Holbdy's argument regarding the Court's treatment of the murder of Elmore for sentencing purposes, this Court noted that Holbdy "absolutely knew before" the incident that Williams intended to kill Elmore, and that Holbdy had "set the stage" for the murder by driving the car into position for Williams to shoot Elmore. *Id.* at 8. The Court also rejected counsel's arguments relating to Holbdy's criminal history score, concluding that the PSR did not overstate the likelihood that he would commit another crime. *Id.* at p. 9. After granting the Government's downward departure motion due to Holbdy's acceptance of responsibility, this Court imposed a sentence of 300 months on him. *Id.* at p. 15. This Court then reiterated the fact that, under the terms of the Plea Agreement, Holbdy could not appeal his conviction or sentence. *Id.* at pp. 17-18.

5

Holbdy did not file any appeal of his conviction or sentence. *See* Motion to Vacate, Set Aside or Correct Sentence (05-CV-1406, Dkt. No. 1) ("Motion to Vacate") at ¶ 8. However, on November 10, 2005, he filed his Motion to Vacate in which he claims that his conviction and sentence should be set aside because he received the ineffective assistance of counsel. *See* Motion to Vacate; *see also* Memorandum of Law in Support of Motion to Vacate (05-CV-1406, Dkt. No. 2) ("Supporting Mem."). Respondent has filed a memorandum of law in opposition to Holbdy's application, 05-CV-1406, Dkt. No. 5, to which Holbdy filed a reply memorandum of law in further support of his Motion to Vacate. 05-CV-1406, Dkt. No. 6. By application signed by Holbdy on June 10, 2008, he seeks permission to amend and/or supplement his Motion to Vacate and to assert herein several new grounds for relief. *See* 05-CV-1406, Dkt. No. 8.

## II.     Discussion

### A.     Standard of Review

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right to counsel has long been recognized as one that entitles a defendant to the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Under the now familiar two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), an individual who claims he received the ineffective assistance of counsel must demonstrate that the representation: 1) "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688; and 2) prejudiced the petitioner. *Id.* at 694. *See Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006); *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000).

In evaluating the first prong of the test, this Court notes that "counsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* 466 U.S. at 690.  In order to establish the second prong of *Strickland* in the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's claimed errors, he would not have pleaded guilty and would have instead insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Moreover, the petitioner bears the burden of proving that he did not receive effective assistance of counsel.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973); *Parsons v. United States*, 919 F.Supp. 86, 88-89 (N.D.N.Y. 1996) (Munson, J.) (citation omitted).

### B. Review of Holbdy's Claims[4]

#### 1. Impact of Elmore Murder on Holbdy's Sentence

Holbdy initially claims that in calculating his base offense level for sentencing purposes, the Probation Department "illegal[ly]" based that calculation in part on his claimed role in the Elmore murder, which in turn had a "tremendous" and adverse effect on the prison term to which he was ultimately sentenced.  *See* Supporting Mem. at 3-4.  Petitioner asserts that trial counsel's failure to inform Holbdy that the Probation Department might refer to that crime in preparing the PSR "clearly ... violated [Holbdy's] Sixth Amendment Right to Effective Assistance," Supporting Mem. at p. 3,

---

[4] Although Holbdy executed a valid waiver of his right to file a collateral attack regarding his conviction, and that waiver was specifically referenced both at his change of plea (*see* Plea Tr. at pp. 15-16) and the sentencing hearing, *see* Sentencing Tr. at pp. 17-18, the Court notes that where a party claims that the waiver was the product of ineffective assistance of counsel, he may properly assert an ineffective assistance claim in a collateral challenge to his conviction, notwithstanding a valid appellate waiver.  *See Frederick v. Warden, Lewisburg Correctional Facility*, 308 F.3d 192, 195-96 (2d Cir. 2002); *see also Sharpley v. United States*, 499 F.Supp.2d 208, 211 (N.D.N.Y. 2007) (Kahn, J.) ("[r]egardless of Petitioner's waiver, Petitioner is entitled to file a collateral attack under Section 2255 claiming ineffective assistance of counsel").  The Court therefore considers the various theories offered by Holbdy in support of his ineffective assistance claim, notwithstanding the validity of the waiver referenced above.

and that Holbdy "would have NEVER waive[d] his Appeal Rights had he known that the Government was gonna [*sic*] turned around and use the Dismissed Murder Count to put his Base Level at 43." *Id.* (typeface in original)

However, this claim appears to overlook the fact that in the plea agreement he executed, Holbdy specifically "acknowledge[d] that his involvement in the Elmore murder ma[de] his base offense level 43 under the Sentencing Guidelines." *See* Plea Agreement at ¶ 7(c); *see also* U.S.S.G. § 2A1.1. Furthermore, at the hearing wherein Holbdy formally entered his guilty plea, AUSA Katko specifically referenced Holbdy's culpability in the Elmore homicide, Plea Tr. at p. 14, and noted that, in the Plea Agreement, Holbdy "stipulate[d] that because of his involvement in the murder, his Base Offense Level [wa]s 43." *Id.* at pp. 15-16. Petitioner thereafter acknowledged that he was aware of the penalties to which he was subject but that he nevertheless wished to plead guilty to the charge. *Id.* at pp. 17-18.

Statements made during a plea allocution are presumptively true "absent credible reason[s] justifying departure from their apparent truth." *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992);[5] *United States v. Caesar*, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) (citations and internal quotations omitted); *see also United States v. Napolitano*, 212 F.Supp. 743, 747 (S.D.N.Y. 1963) ("defendant's admissions ... [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion").

Holbdy was plainly aware at his change of plea that he was subject to a term of imprisonment of 360 months to life due to, *inter alia*, his complicity in the Elmore murder. Plea Tr. at pp. 15-16. Thus, his current, unsubstantiated claims that: i) he was unaware that the Probation Department

---

[5] As the Supreme Court observed in *Blackledge v. Allison*, 431 U.S. 63 (1977), a criminal defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* at 74.

would base its sentencing recommendation in part on his role in the Elmore murder; ii) his attorney never discussed the impact of that murder on Holbdy's sentence; and iii) he would not have pleaded guilty to the charge or waive his right to appeal if he was aware of the foregoing, are squarely contradicted by the objective evidence referenced above.  Therefore, his claims which allege that his trial counsel rendered ineffective assistance based upon any of the above theories is necessarily without substance.[6]

### 2.  **Validity of Guilty Plea**

Holbdy also asserts that his guilty plea was not knowingly and voluntarily made because he was never made aware of the consequences of his guilty plea.  *See* Supporting Mem. at p. 2.

The longstanding test for determining the validity of a guilty plea is whether it reflects a "'voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made).

The Due Process Clause of the United States Constitution requires a showing that the defendant's plea was entered both knowingly and voluntarily.  *See Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998).  On collateral review, therefore, a court may only properly vacate a guilty plea where the petitioner has established that the

---

[6] Although Holbdy claims that the "count" in the Superceding Indictment that charged him with the Elmore murder was dismissed, *see* Supporting Mem. at pp. 2-3, this claim neglects to acknowledge the fact that the murder allegation was an ***overt act*** that Holbdy was alleged to have committed in conjunction with the conspiracy charge to which he pleaded guilty, not a separate and distinct count returned against Holbdy by the Grand Jury in the Superceding Indictment.  *See* Superceding Indictment.

plea was not made knowingly and voluntarily. *See Salas*, 139 F.3d at 324; *Tejeda v. United States*, No. 99 CIV. 2948, 1999 WL 893275, at *4 (S.D.N.Y. Oct. 18, 1999).

In support of his claim that his guilty plea was not knowingly, voluntarily and intelligently made, Holbdy now claims that he was unaware that: i) under the terms of the Plea Agreement he was waiving his appellate rights; and ii) the Probation Department's recommendation regarding Holbdy's base offense level and sentence could be based in part on his alleged role in the Elmore murder. *See* Supporting Mem. at pp. 2-4.

In his Plea Agreement, Holbdy specifically acknowledged that, after consultation with defense counsel, he fully understood the extent of his rights to appeal and/or to collaterally attack his conviction and sentence, but that he nevertheless agreed to waive any and all such rights if he received a sentence of imprisonment of 300 months or less. *See* Plea Agreement at ¶ 11. That waiver was specifically referenced by AUSA Katko at the proceeding wherein Holbdy entered his guilty plea, *see* Sentencing Tr. at p. 16, yet Holbdy nevertheless reiterated his desire to plead guilty to the conspiracy charge. *Id.* at pp. 17-18. Since Holbdy's current, unsubstantiated claim that he was unaware of the waiver provision is belied by not only the Plea Agreement but also by the transcript of the proceeding wherein he entered his guilty plea, his Motion to Vacate cannot be granted on this theory.

As to Holbdy's claim regarding the Elmore murder and its impact on petitioner's sentence, as noted above, both the Plea Agreement and the hearing relating to his change of plea conclusively establish that Holbdy was well aware that his involvement in that murder would be considered by the Probation Department in computing Holbdy's proposed base offense level, which in turn would directly impact the Sentencing Guidelines range of imprisonment to which he was subject. *See* Plea

Agreement at ¶¶ 2, 7(c); Plea Tr. at pp. 14-16.  Thus, his unsubstantiated claim that his guilty plea should be invalidated because he was purportedly unaware of the foregoing must necessarily be denied.

### 3.     Failure to Challenge Holbdy's Criminal History Score

Petitioner next asserts several theories in support of his claim that he was deprived of the effective assistance of counsel because counsel purportedly failed to raise certain arguments challenging the Probation Department's recommendation concerning Holbdy's criminal history.  *See* Supporting Mem. at pp. 4-7.

In support of these claims, he initially argues that defense counsel failed to argue that the PSR improperly attributed a total of 6 criminal history points to him as a result of prior convictions which included both youthful offender and misdemeanor offenses.  *See* Supporting Mem. at pp. 4-5.  However, the argument that he asserts in support of this claim is ***virtually identical*** to the argument ***trial counsel made to this Court*** in his sentencing memorandum.  *Compare* Supporting Mem. at p. 5 *with* Sentencing Mem. at p. 8.  Since petitioner appears to have incorporated trial counsel's argument that requested a downward departure in Holbdy's criminal history category in petitioner's own *pro se* supporting memorandum of law, his claim that counsel never raised such an argument is necessarily specious.[7]

Petitioner next claims that counsel improperly failed to argue that the PSR "double-counted" a conviction of Holbdy that occurred on January 30, 2002.  *See* Supporting Mem. at pp. 5-6.  Specifically, he argues that because the offense that formed the basis of that conviction was also

---

[7] Trial counsel reiterated his argument regarding Holbdy's criminal history category at the sentencing hearing, *see* Sentencing Tr. at p. 8, however because this Court concluded that Holbdy's likelihood to commit another crime was not overstated in the PSR, it denied defense counsel's downward departure request.  *Id.* at p. 9.

referenced as an overt act of the conspiracy charge to which he ultimately pleaded guilty, trial counsel rendered ineffective assistance when he failed to argue that one offense was impermissibly "double counted" against Holbdy for sentencing purposes. *Id.* However, because counsel raised this precise argument in his sentencing memorandum, *see* Sentencing Mem. at pp. 8-9, this claim is without substance.

Petitioner also asserts that his trial counsel wrongfully failed to object to the fact that two criminal history points were added to Holbdy's criminal history score by the Probation Department because he committed the offense charged in the Superceding Indictment within two years of his December, 2002 release from prison. *See* Supporting Mem. at p. 6. Petitioner specifically asserts that because the offenses alleged in that instrument ***predated*** his release from prison, the two points were improperly added to his criminal history score, and that trial counsel rendered ineffective assistance by failing to make that argument. *Id.* at pp. 6-7. However, counsel raised this same claim in his sentencing memorandum. *See* Sentencing Mem. at p. 9. Counsel therefore cannot be found to have rendered ineffective assistance due to his alleged failure to make such an argument.

In his final claim in support of his assertion that his counsel rendered ineffective assistance, Holbdy claims that the PSR "significantly 'OVER-REPRESENT[ED]" the seriousness of his criminal history, and appears to suggest that counsel rendered ineffective assistance by failing to argue that point. *See* Supporting Mem. at p. 7. Since this identical argument was asserted by counsel in his sentencing memorandum, however, *see* Sentencing Mem. at p. 9, this final theory in support of Holbdy's ineffective assistance claim must also be denied as meritless.

**III.    Motion to Amend and/or Supplement the Motion to Vacate**

In his Motion to Amend and/or Supplement his Motion to Vacate, Holbdy seeks to assert the

12

following new claims in support of his Motion to Vacate: i) this Court committed error by enhancing Holbdy's sentence by referring to the Elmore murder; ii) the prosecutor engaged in misconduct through the selective application of the Sentencing Guidelines to the detriment of Holbdy; iii) the sentence imposed on Holbdy was "unreasonable" and violative of his Fifth and Sixth Amendment rights under the United States Constitution; and iv) the Second Circuit's decision in *United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008) supports Holbdy's claim that he must be re-sentenced. *See* 05-CV-1406, Dkt. No. 8.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") created a one-year statute of limitations for the filing of petitions for writs of habeas corpus under 28 U.S.C. §§ 2254 and 2255. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008). Holbdy was sentenced by this Court on November 24, 2004, *see* 03-CR-0243, Dkt. No. 617, and this action was commenced more than two years ago, in November, 2005. *See* 05-CV-1406, Dkt. No. 1. Thus, the claims Holbdy seeks to assert by way of the present motion to amend will necessarily be time-barred by the AEDPA's limitations period unless such proposed claims "relate back" to the date the initial petition was filed within the meaning of Rule 15 of the Federal Rules of Civil Procedure.[8]

Rule 15(c) provides, in relevant part: "An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). In *Mayle v. Felix,* 545 U.S. 644 (2005), the Supreme Court rejected the habeas petitioner's contention that Rule 15(c)'s "conduct, transaction, or occurrence" standard should be interpreted broadly to mean the same "trial, conviction, or sentence," concluding

---

[8] The Federal Rules of Civil Procedure apply to actions brought pursuant to 28 U.S.C. § 2255. *See* Fed.R.Civ.P. 81(a)(2); Rule 12, Rules Governing § 2255 Cases.

that an amended petition "does not relate back ... when it asserts a new ground for relief supported by facts that differ in time and type from those the original pleading set forth." *Id.* at 649-50, 657. This Court must therefore ascertain whether Holbdy's proposed claims "relate back" to the Motion to Vacate he filed in this action and are therefore timely under the AEDPA.

Petitioner's claim that this Court erred by enhancing his sentence by referring to the murder charge contained in the Superceding Indictment does relate to his first theory in support of his ineffective assistance claim, which argues that trial counsel wrongfully failed to object to the Probation Department's purported error in citing Holbdy's role in the Elmore murder in calculating his Total Offense Level. However, because that claim is without substance for the reasons stated above, it would be futile to allow petitioner to amend his Motion to Vacate to assert the first proposed claim in petitioner's motion to amend. *E.g. Guidice v. United States*, No. 03 CV 4983, 2007 WL 1987746, at *13-14 (E.D.N.Y. July 3, 2007) (denying proposed amendment to § 2255 motion because amendment would be futile).

Since none of the other three proposed claims properly relate back to the claims petitioner asserted in his Motion to Vacate, the Court must deny those proposed amendments as untimely. *E.g.*, *Mayle,* 545 U.S. at 649-50; *Valerio v. Phillips*, No. 02-CV-903, 2007 WL 4191817, at *6-7 (W.D.N.Y. Nov. 21, 2007) (denying motion to amend where proposed claims that were otherwise time-barred did not relate back to original motion to vacate).[9]

**IV.    Certificate of Appealability**

---

[9] The final proposed claim in petitioner's motion to amend / supplement is based upon a Second Circuit decision that was decided subsequent to the filing of Holbdy's Motion to Vacate. *See* 05-CV-1406, Dkt. No. 8 at p. 12 (citing *Regalado*). However, even if that case, which was decided in the context of a direct appeal, could properly be applied retroactively to the present Motion to Vacate, this Court is nevertheless not persuaded that the holding in that case warrants granting the relief sought by Holbdy.

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (B) the final order in a proceeding under section 2255.[10]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**WHEREFORE**, after having reviewed the record relating to the underlying criminal matter, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED** that Petitioner's Motion to Vacate (05-CV-1406, Dkt. No. 1) is **DENIED**, and it is further

**ORDERED** that Petitioner's Motion to Amend and/or Supplement his Motion to Vacate (05-CV-1406, Dkt. No. 8) is **DENIED**, and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

A Certificate of Appealability shall not be issued in this case.

**IT IS SO ORDERED.**

Date: July 8, 2008

Norman A. Mordue
Chief United States District Court Judge

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).